IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| NEW LONDON TOBACCO MARKET, INC. and FIVEMILE ENERGY, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>JAMES C. JUSTICE COMPANIES, INC., JUSTICE FARMS OF NORTH CAROLINA, LLC, OAKHURST CLUB, LLC, SOUTHERN MINERALS, LLC, and JAMES C. JUSTICE, III<br><br>    **Defendants.** | Docket No. _____ |

## COMPLAINT

COME the Plaintiffs, New London Tobacco Market, Inc. ("NLTM"), and Fivemile Energy, LLC, by and through counsel, and for their Complaint against the Defendants states as follows:

**The Parties, Principal Actors and Jurisdiction**

1.  NLTM is a corporation chartered under the laws of the Commonwealth of Kentucky with its principal place of business in London, Kentucky.

2.  Fivemile Energy, LLC ("Fivemile") is a limited liability company organized under the laws of the State of Tennessee with its principal place of business in Tennessee. Its members are William G. Brownlow, IV and his wife, Cassandra Brownlow, both of whom are citizens of Tennessee. Fivemile is the agent for NLTM and brings this action in its capacity as an agent, and for the benefit of NLTM.

3.  James C. Justice, III ("Jay Justice") is a citizen of the State of Virginia.

4.  Dr. Jillean L. Justice ("Jill Justice") is a citizen of West Virginia. She is not named as a Defendant in this action, but is a member of the limited liability companies identified below

that are Defendants.

5. James C. Justice, II is a citizen of the State of West Virginia. He is the current governor of the State of West Virginia, and will be referred to herein as "Governor Justice."[1] Governor Justice is not named as a Defendant in this action, but is a member of the limited liability companies identified below that are Defendants. He is the father of Jay Justice and Jill Justice.

6. James C. Justice Companies, Inc. ("Justice Companies") is a corporation chartered under the laws of Delaware with its principal place of business in Virginia. Upon information and belief, its shareholders are Governor Justice, Jay Justice and Jill Justice. Jay Justice is its executive vice president. Governor Justice is its president.

7. Justice Farms of North Carolina, LLC ("Justice Farms") is a limited liability company organized under the laws of Virginia with its principal place of business in Virginia. Upon information and belief, its members are citizens of states other than Tennessee and Kentucky. It is an affiliate and an insider of Justice Companies.

8. Oakhurst Club, LLC ("Oakhurst Club") is a limited liability company organized under the laws of West Virginia with its principal place of business in West Virginia. Its members are Governor Justice, Jay Justice, and Jill Justice, who are citizens of West Virginia, Virginia, and West Virginia, respectively. It is an affiliate and an insider of Justice Companies.

9. Southern Minerals, LLC ("Southern Minerals") is a former limited liability company organized under the laws of Virginia that had its principal place of business at 302 S. Jefferson Street, Roanoke, Virginia. Its status as a Virginia limited liability company is now "cancelled." *See* Exhibit 1 hereto. It was an affiliate and an insider of Justice Companies. Upon information and belief, its members are members of the Justice Family who are citizens of states other than

Tennessee and Kentucky.

10. This Court has jurisdiction of this action because the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of costs and interest.

### Factual Background – Plaintiffs Become Creditors of Justice Companies

11. The business dealings between Plaintiffs and Justice Companies began in 2005. On October 5, 2005, NLTM and Kentucky Fuel Corporation ("Kentucky Fuel"), entered into "Assignment of Leases and Permits" (the "Original Assignment"). In that Original Assignment, among other things, NLTM assigned certain leases of mineral rights, known as the Deep Wood Leases and the Fivemile Leases, to Kentucky Fuel.

12. On November 23, 2005, Justice Companies executed a Guaranty Agreement (the "Justice Guaranty"), pursuant to which, among other things, it guaranteed the obligations of Kentucky Fuel to NLTM under the Original Assignment.

13. In the Original Assignment and the Justice Guaranty, Justice Companies agreed to pay Plaintiffs' reasonable attorneys' fees and expenses incurred as a result of any default or failure to perform by Kentucky Fuel or Justice Companies.

14. On or about November 22, 2010, NLTM, Kentucky Fuel, Fivemile, Justice Companies and others entered into an agreement styled "Fourth Amendment of Assignment of Leases and Permits" (the "Fourth Amendment").

15. In the Fourth Amendment, the parties agreed, among other things, to the following:

    a. Kentucky Fuel agreed to provide to Fivemile all payments due under the lease of property known as the "Strong Brothers property" within seven days of any request for

---

[1] Governor Justice was not the Governor of West Virginia at the time of many of the transactions described herein. He

3

such payment,

      b.    Kentucky Fuel agreed to pay NLTM Monthly Retainer Fees of $10,000 per month, beginning on December 1, 2010.

      c.    Article 14 provided as follows:

> 14.    **Costs**.  If any lawsuit, arbitration or other action is commenced or taken which arises out of or relates to this Agreement, the prevailing parties shall be entitled to recover from the defaulting party all costs, fees and expenses, including all attorney fees and expenses, in connection therewith.

      d.    Justice Companies reaffirmed its obligations under the Justice Guaranty and confirmed that such obligations include the obligations of Kentucky Fuel in the Fourth Amendment as well as the obligations pursuant to the original Justice Guaranty.

16.    Kentucky Fuel has not paid the Monthly Retainer Fees as required by the Fourth Amendment.  As of the date this Complaint is being filed, the unpaid Monthly Retainer Fees are $770,000, consisting of the $10,000 per month from May 1, 2011, through September 1, 2017.  These Monthly Retainer Fees continue to accrue at the rate of $10,000 per month.

17.    Kentucky Fuel has failed and refused to pay rents due under the lease of the Strong Brothers Property as required by the Fourth Amendment.  As of the date this Complaint is being filed, the amount of such payments owed by Defendants is $20,000.

18.    Justice Companies has failed and refused to pay the amounts owed by Kentucky Fuel as required by the Justice Guaranty.

19.    Kentucky Fuel's and Justice Companies' failure to honor their contractual obligations described herein was intentional and was part of their business plan and strategy, as evidenced by their course of dealings whereby they have evidenced a pattern and practice of

---

is referred to herein as "Governor Justice" out of respect for his office.

4

disregarding and refusing to pay their contractual obligations.

## The Original Federal Suit

20.     On May 8, 2012, Plaintiffs instituted an action in this Court styled *New London Tobacco Market, Inc., et al. v. Kentucky Fuel Corporation and James C. Justice Companies, Inc*., Case No. 12-91-GFVT (the "Original Action").

21.     On September 30, 2014, this Court entered a default judgment against the Defendants in the Original Action. This default judgment established the Justice Companies' liability for the Monthly Retainer Fees, the Strong Brothers Lease Payments and Plaintiffs' attorneys' fees and expenses. It also entered judgment in favor of Plaintiffs and against Justice Companies for fraud and punitive damages.

22.     In the Original Action, the Magistrate Judge issued a Report & Recommendation on January 17, 2017, recommending a judgment against Justice Companies in excess of $60,000,000. The Court did not initially accept this recommendation, but referred the matter back to the Magistrate Judge for an evidentiary hearing and a Report and Recommendation regarding the amount of damages that should be awarded. Thus, as of the filing of this Complaint there has not been a final judgment in the Original Action for the amount of damages, including the amount of attorneys' fees that the Court will award pursuant to the default judgment against Justice Companies. However, the Court's Order of September 30, 2014, establishes that Justice Companies are liable to the Plaintiffs for breach of contract, fraud and punitive damages.

## Justice Companies' Transfers of Assets

23.     After the filing and service of the Original Action in May 2012, the Justice Companies in combination with other persons and companies, began to engage in a series of transactions with the intent to hinder, delay or defraud its creditors. Some of these transfers were transfers of real estate to Justice Companies' related entities, insiders or affiliates made without

5

valuable consideration for the real estate transferred. Others were transfers of valuable real estate in exchange for cash or other consideration that would make it more difficult for creditors, such as Plaintiffs, to collect their debts from Justice Companies. These fraudulent conveyances include the transfers described below. They are summarized in Exhibit 2 hereto.

24. Beginning in 2013 and continuing through at least 2016, Justice Companies engaged in numerous additional transfers with the intent to hinder, delay or defraud its creditors. All these transfers, which are described in the following paragraphs 25 through 31, were made to transferees that were affiliates and insiders of Justice Companies. Justice Companies did not receive consideration equal to a reasonably equivalent value of the properties transferred because no consideration was paid for any of these transfers.

25. By Quitclaim Deed dated November 27, 2013, recorded on January 8, 2014 (Exhibit 3 hereto), Justice Companies transferred the mineral rights to approximately 929 acres in Marion County, South Carolina to Southern Minerals, LLC. There was no reasonably equivalent value received for the transfer. Although the Deed includes a pro-forma recital that the stated consideration for this transfer was $5.00, it includes an affidavit that "no monies were exchanged" for the transfer. This Deed was executed by Jay Justice on behalf of Justice Companies.

26. On January 24, 2014 Justice Companies entered into a series of at least ten transactions by which it transferred valuable real estate in Pasquotank and Perquimans Counties, North Carolina to Justice Farms. These transactions were accomplished by deeds executed that date and recorded on February 5, 2014. Each of these deeds was executed by Jay Justice on behalf of Justice Companies. There was no reasonably equivalent value received for the transfer for each of the property interests transferred. Although each contains a pro-forma recital of a stated cash consideration of $10.00, each also includes a certification that the consideration for the transfer was "$0.00." The properties transferred are as follows:

6

  a. 0.43 acres in Pasquotank County, North Carolina (Exhibit 4 hereto);

  b. 69.25 acres in Pasquotank County, North Carolina (Exhibit 5 hereto);

  c. Two parcels containing 876.48 acres in Pasquotank County, North Carolina (Exhibit 6 hereto);

  d. Seventeen parcels containing 10+ acres in Pasquotank County, North Carolina (Exhibit 7 hereto);

  e. 272 acres in both Pasquotank and Perquimans Counties, North Carolina (Exhibit 8 hereto);

  f. 3.87 acres of the Tanglewood Industrial Park in Pasquotank County, North Carolina (Exhibit 9 hereto);

  g. A lot and right of way in in Pasquotank County, North Carolina for a stated consideration of $10.00 (Exhibit 10 hereto);

  h. Two subdivision lots in Pasquotank County, North Carolina for a stated consideration of $10.00 (Exhibit 11 hereto);

  i. A lot consisting of two tracts containing seven parcels of a subdivision in Pasquotank County, North Carolina (Exhibit 12 hereto); and

  j. 3918 acres in Pasquotank County, North Carolina (Exhibit 13 hereto).

27. By Special Warranty Deed dated August 12, 2014, recorded on August 15, 2014 (Exhibit 14 hereto), Justice Companies transferred 123.053 acres in Orange County, Virginia to Justice Farms. The property interest transferred was in excess of the consideration for the transfer and there was no reasonably equivalent value received for the transfer. Although this Deed contains a pro forma recital that the stated consideration for this transfer was $10.00, the Deed certifies that no consideration was paid but that the assessed value of the property conveyed was $1,182,700. This Deed was executed by Jay Justice on behalf of Justice Companies.

28. By Special Warranty Deed dated August 12, 2014, recorded on August 15, 2014 (Exhibit 15 hereto), Justice Companies transferred 1,559.527 acres in Orange County, Virginia to Justice Farms. The property interest transferred was in excess of the consideration for the transfer and there was no reasonably equivalent value received for the transfer. Although this Deed contains a pro forma recital that the stated consideration for this transfer was $10.00, the Deed certifies that no consideration was paid but that the assessed value of the Property conveyed was $7,288,700.00. This Deed was executed by Jay Justice on behalf of Justice Companies.

29. By Special Warranty Deed dated October 19, 2014, recorded on October 20, 2014 (Exhibit 16 hereto), Justice Companies transferred 710 acres in Prince George County, Virginia to Justice Farms. The property interest transferred was in excess of the consideration for the transfer and there was no reasonably equivalent value received for the transfer. Although this Deed contains a pro forma recital that the stated consideration for this transfer was $10.00, the Deed also certifies that no consideration was paid because it was between related parties, but that the assessed value of the property conveyed was $1,277,400.00. This deed was executed by Jay Justice on behalf of Justice Companies.

30. By Quitclaim Deed dated April 5, 2016, recorded on April 6, 2016 (Exhibit 17 hereto), Justice Companies transferred 500 acres in Monroe County, West Virginia to Oakhurst Club, LLC. Although this Deed contains a pro forma recital that the stated consideration for this transfer was $10.00, it certifies that no consideration was paid because it was a quitclaim deed between related parties. The property interest transferred was in excess of the consideration for the transfer and there was no reasonably equivalent value received for the transfer. This Deed was executed by Stephen W. Ball on behalf of Justice Companies.

31. By Special Warranty Deed dated May 9, 2016, recorded on May 10, 2016 (Exhibit 18 hereto), Justice Companies transferred four tracts of land comprising over 112 acres in

8

Clarendon County, South Carolina to Justice Farms. There was no reasonably equivalent value received for the transfer. Although the Deed recites a pro-forma consideration for this transfer of "Five and no/100 ($5.00) Dollars and No Consideration to the Grantor in hand paid," it also includes an Affidavit stating that it is exempt from a recording fee because there was "No Consideration" for the transfer. This Deed was executed by Jay Justice on behalf of Justice Companies

**Other Transfers**

32. In addition to the above fraudulent conveyances, Justice Companies has made, or agreed to make, other transfers of assets that Plaintiffs believe are made with the intent to hinder, delay or defraud Plaintiffs as creditors of Justice Companies. These include those described in the following paragraphs 33 through 38. Plaintiffs believe and therefore allege that the intent of Justice Companies and its Co-Conspirators (as defined below) has been and is to convert real property to cash or other assets that will be difficult to trace or that can be dissipated or hidden, with the intent to hinder, delay or defraud Plaintiffs and other creditors.

33. By General Warranty Deed made on April 28, 2014, and executed by Jay Justice (Exhibit 19 hereto), Justice Companies transferred certain real property commonly described as 302 S. Jefferson Street, Roanoke, Virginia to 302 Jefferson, LLC, a Virginia limited liability company. Upon information and belief, 302 Jefferson, LLC is an affiliate of Justice Companies. This deed recites that the consideration was $3,200,000.

34. By Special Warranty Deed dated November 25, 2014, and recorded on November 26, 2014 (Exhibit 20 hereto), Justice Companies transferred over 3900 acres in Clarendon County, South Carolina, to Jay Justice. An Affidavit with this deed recites that the consideration "paid or to be paid" is $13,500,000. Plaintiffs do not know if this amount has been paid or, if so, to whom.

35. Beginning in 2014, Justice Companies entered into agreements to sell over twenty

thousand acres of real property located in North Carolina, South Carolina and Virginia to affiliates of Farmland Partners, Inc. ("FPI (REIT)"), a publically traded real estate investment trust organized under the laws of Maryland in two separate transactions. FPI (REIT) acquires farmland throughout the United States and then leases the farmland to others. Upon information and belief, Farmland Partners Operating Partnership ("FP Operating Partnership") is owned by FPI (REIT). FP Operating Partnership owns and operates several subsidiaries, including FPI Colorado, LLC ("FPI-CO") and FPI Carolinas, LLC ("FPI-CAR"). These two transactions were pursuant to Real Estate Purchase Agreements signed on November 13, 2014 ("REPA I") and March 23, 2015 ("REPA II") and are described below.

  a. The first real estate purchase agreement, REPA I, contracted to convey seven farms in Marion, Lee, Clarendon, and Sumter Counties, South Carolina to FPI-CO. On or about December 22, 2014, Justice Companies and Ten Mile Bay, LLC entered into REPA I with FPI-CO to transfer 6,819 acres of real property to FPI-CO for a purchase price of $28,000,000, payable by wire transfer. This purchase price was later amended to $27,450,000. REPA I allowed the sellers to lease back the property at a rate of $746,147 (later increased to $764,727.54) per year for three years. REPA I also included a repurchase option, allowing the sellers to repurchase the property on the third anniversary of the Agreement. REPA I was signed by "James C. Justice" on behalf of Justice Companies.

  b. By Special Warranty Deed dated December 22, 2014, recorded in Sumter and Clarendon Counties on December 22 and 23, 2014, respectively, Justice Companies transferred fourteen parcels containing approximately 3,000 acres in Sumter and Clarendon Counties, South Carolina to FPI-CO. These deeds contain pro forma recitals of $5.00 consideration, but the Affidavits of Consideration attached to the deeds state that this is "an

arm's length real property transaction and the sales price paid or to be paid in money or money's worth was $11,416,327.12" [for the deed recorded in Clarendon County] and $3,926,261.88 [for the deed recorded in Sumter County]. These deeds reserved a repurchase option by the grantors. These deeds were executed by Governor Justice on behalf of Justice Companies. Upon information and belief, the transaction evidenced by these deeds were part of the transaction pursuant to REPA I.  Copies of these deeds recorded in Clarendon and Sumter Counties are attached hereto as Exhibits 21 and 22, respectively.

      c.      By Warranty Deed dated December 22, 2014, recorded on December 23, 2014 (Exhibit 23 hereto), Justice Companies transferred nine tracts containing over 2,100 acres in Marion County, South Carolina to FPI-CO.  This deed contains a pro forma recital of $5.00 consideration, but the Affidavit of Consideration attached to the deed states that it is "an arm's length real property transaction and the sales price paid or to be paid in money or money's worth was $7,034,063.00."  This deed was executed by Governor Justice on behalf of Justice Companies.  Upon information and belief, the transaction evidenced by this deed was part of the transaction pursuant to REPA I.

      d.      The second real estate purchase agreement, REPA II, contracted to convey eight farms in three states.  On or about June 2, 2015, Jay Justice, individually, Justice Companies, Justice Farms and Alabama Carbon, LLC, as "Seller" entered into REPA II with FPI-CAR (the "Buyer"), FPI (REIT) and FP Operating Partnership to transfer 15,042 acres of property located in Beaufort, Currituck, Pamlico, Pasquotank, and Perquimans Counties, North Carolina; Marlboro County, South Carolina, and Chesapeake, Virginia to FPI-CO.   Upon information and belief, the total consideration for this transaction was over $49,000,000, payable in cash or by wire, 824,398 shares of common stock of FPI (REIT),

11

and 1,993,709 units of limited partnership interest in FP Operating Partnership ("OP Units"), of which 883,723 units were redeemable for cash. REPA II was signed by "James C. Justice" on behalf of Justice Companies. Upon information and belief, the aggregate fair value of the common stock and OP Units was $30,914,634, and the total purchase price for this transaction paid to the Sellers, including the cash consideration, common stock of FPI (REIT) and the OP Units was $80,913,167. *See* excerpt of FPI Form 10-Q for the quarter ended June 30, 2015 (Exhibit 24 hereto).

    e.    By Special Warranty Deed dated May 29, 2015, recorded on June 3, 2015 (Exhibit 25 hereto), Justice Companies and Justice Farms, transferred three farm properties known as REPA Farm 5, 6 and 7, containing over 3,000 acres in Pasquotank County, North Carolina and Perquimans County, North Carolina to FPI-CAR. The consideration for this transfer was not specified. This Deed reserved a repurchase option by the grantors. This Deed was executed by Governor Justice on behalf of both Justice Companies and Justice Farms of North Carolina, LLC. Upon information and belief, the transaction evidenced by this deed was part of the transaction pursuant to REPA II.

36. Justice Companies currently is auctioning Flowerdew Hundred Plantation, a 1,300 acre property with a 14,000 square foot house in Prince George County, Virginia. Flowerdew Hundred Plantation previously was listed for sale at $12.2 million. A copy of a listing for this property is attached as Exhibit 26.

37. Justice Companies currently is auctioning Horseshoe Farm, an 880 acre property with a 7,200 square foot house on the Robinson and Rapidan Rivers in Rapidan, Virginia. Horseshoe Farm was previously listed for sale at $9.2 million. A copy of a listing for this property is attached as Exhibit 27.

38. Justice Companies currently is auctioning Rapidan Farm, a 1,700 acre property in

Culpeper, VA. The improvements on the property include a 4,500 square foot main house as well as several other homes. Rapidan Farm previously was listed for sale for $18.8 million. A copy of a listing for this property is attached as Exhibit 28.

## COUNT I
### (Fraudulent Transfers)

39. Plaintiffs reaffirm and reallege the allegations of the above paragraphs as if set forth fully herein.

40. The transfers of real property described above were made without valuable consideration. They were made with the actual intent to hinder, delay or defraud Plaintiffs, who were creditors of Justice Companies.

41. Justice Companies did not receive a reasonably equivalent value in exchange for the transfers described in paragraphs 25-31, above and it was engaged in a business for which its remaining assets were unreasonably small in relation to the business.

42. Transfers made after the Magistrate Judge's initial Report and Recommendation in the Original Action, on January 17, 2017, were made when Justice Companies believed that it would incur debts beyond its ability to pay as they became due.

43. The transfers described above were made at a time when Justice Companies was not paying its debts as they became due. Justice Companies was not paying either the monthly retainer fees or the rents due under the lease of the Strong Brothers Property when due. Prior to 2016 it was not paying the minimum royalties due under the Fourth Amendment when they were due. As a result, Justice Companies was presumptively insolvent at the time of these transfers. In addition, upon information and belief, Justice Companies and its affiliates were not paying mine safety fines, county taxes and federal and state tax liens as these debts became due. *See* Exhibit 29 hereto.

44. Justice Companies also has represented that Plaintiffs would have difficulty in

collecting a judgment against it. It has represented that it would have to file bankruptcy if Plaintiffs were awarded a judgment in the Original Action in the amount recommended by the Magistrate Judge.

45. Because the conveyances executed by Jay Justice as described herein constituted fraudulent and tortious conduct, he is personally liable for the damages caused thereby.

46. Defendants' actions described herein violate the Kentucky Fraudulent Conveyance Act, KRS Chapter 378, §§ 378.010, et seq., including §§ 378.010 – 378.030, and the Kentucky Uniform Voidable Transactions Act, KRS Chapter 378A, § 378A.010, et seq., including §§ 378A.040 and 378A.050, entitling Plaintiffs to the remedies provided by those statutes and at common law.

47. As a direct and proximate result of the above transfers and Defendants' actions described herein, the Plaintiffs have been damaged in that the Defendants have transferred Justice Companies' assets in a manner that will prevent Plaintiffs from collecting the full amount of the debt owed by Justice Companies to them, absent relief by this Court.

48. The Defendants conduct in making the fraudulent conveyances described herein was intentional, entitling Plaintiffs to an award of punitive damages.

## COUNT II
### (Attorneys' Fees and Costs)

49. Plaintiffs reaffirm and reallege the allegations of the above paragraphs as if set forth fully herein.

50. This action is a lawsuit that relates to the Fourth Amendment. The Plaintiffs therefore are entitled to recover from the Defendants, all costs, fees and expenses, including attorneys' fees and expenses, incurred in connection with this action.

## COUNT III
### (Conspiracy)

51. Plaintiffs reaffirm and reallege the allegations of the above paragraphs as if set forth fully herein.

52. Jay Justice, Justice Farms, Southern Minerals, Bellwood Corporation, and Oakhurst Club (the "Co-Conspirators") (collectively with Justice Companies, the "Conspirators") entered into an agreement or combination to accomplish an unlawful act by defrauding Plaintiffs by fraudulently transferring or liquidating the assets of Justice Companies as described herein.

53. As set forth above, Jay Justice, individually was a transferee of one of the fraudulent conveyances. As such, and because he was acting to benefit himself personally and individually, he was not acting in the interest of Justice Companies in connection with such transfer. Thus, he stood as a third party with respect to Justice Companies and Plaintiffs.

54. This agreement was an unlawful and corrupt agreement by the Conspirators to accomplish an unlawful goal of fraudulently transferring or liquidating valuable real estate belonging to Justice Companies, so that Plaintiffs could not collect the debts owed to them by Justice Companies.

55. The Co-Conspirators acted in concert with Justice Companies to make the fraudulent conveyances described herein and pursuant to a common design with Justice Companies to accomplish this unlawful goal.

56. The Co-Conspirators knew that Justice Companies' conduct described herein constituted a breach of duty and gave substantial assistance or encouragement to Justice Companies to breach its duties and accomplish its unlawful goal.

57. As a direct and proximate result of the unlawful conspiracy described herein, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs pray that the Court take jurisdiction of this matter and grant them

the following relief.

(1) Judgment against the Defendants, James C. Justice Companies, Inc., Justice Farms of North Carolina, LLC, Bellwood Corporation, Oakhurst Club, LLC, Southern Minerals, LLC, and James C. Justice, III, and any immediate or mediate transferees of the first transferees described herein, other than one who took in good faith for value, for compensatory damages in the amount of any judgment awarded to Plaintiffs in the Original Action or the value of the properties transferred, whichever is less;

(2) An award of punitive damages in the amount of at least $16,990,000;

(3) A judgment that the transfers described herein are made with actual intent to hinder, delay or defraud Plaintiffs void;

(4) A lien *lis pendens* or an attachment of the properties transferred or other property of the transferees, as may be permitted by law;

(5) All Plaintiffs' attorneys' fees and costs incurred in connection with this action; and

(5) Such other relief as the circumstances may require, including pre-judgment interest and the costs of these proceedings.

                                              */s/ Scott M. Webster*
                                              Scott M. Webster
                                              Tooms, Dunaway & Webster
                                              1306 West Fifth Street, Suite 200
                                              P.O. Box 905
                                              London, Kentucky 40743-0905
                                              606.864.4145 (telephone)
                                              606.878.5547 (facsimile)
                                              swebster@toomsdunaway.com

                                              ***Counsel for New London Tobacco***
                                              ***Market, Inc., and Fivemile Energy, LLC***