**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN LONDON DIVISION**

| | |
|---|---|
| NEW LONDON TOBACCO MARKET, INC. | ) |
| and FIVEMILE ENERGY, LLC, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | )     No.  6:17-cv-00245-CFVT |
| JAMES C. JUSTICE COMPANIES, INC., | ) |
| KENTUCKY FUEL CORPORATION, | ) |
| JUSTICE MANAGEMENT SERVICES, LLC, | ) |
| JUSTICE FARMS OF NORTH CAROLINA, | ) |
| LLC, OAKHURST CLUB, LLC, | ) |
| SOUTHERN MINERALS, LLC, and | ) |
| JAMES C. JUSTICE, III | ) |
| | ) |
|     Defendants. | ) |

<u>**AMENDED COMPLAINT**</u>

Plaintiffs, New London Tobacco Market, Inc. ("NLTM"), and Fivemile Energy, LLC, by

and through counsel, pursuant to Rule 15, Fed. R. Civ. P., for their Amended Complaint against the

Defendants state as follows:

**The Parties, Principal Actors and Jurisdiction**

1.      NLTM is a corporation chartered under the laws of Kentucky with its principal place

of business in London, Kentucky.

2.      Fivemile Energy, LLC ("Fivemile") is a limited liability company organized under

the laws of the State of Tennessee with its principal place of business in Tennessee.  Its members

are William G. Brownlow, IV and his wife, Cassandra Brownlow, both of whom are citizens of

Tennessee.  Fivemile is the agent for NLTM and brings this action in its capacity as an agent, and

for the benefit of NLTM.

3.      James C. Justice, III ("Jay Justice") is a citizen of the State of Virginia. He is a

director and president or executive vice president of the following companies that do business in

Kentucky: James C. Justice Companies, Inc. ("Justice Companies"), Kentucky Fuel Corporation ("Kentucky Fuel"), Southern Coal Corporation, A & G Coal Corporation, Infinity Energy, Inc., Virginia Fuel Corporation, Justice Low Seam Coal Mining, Inc. and Beech Creek Coal.

4. Dr. Jillean L. Justice ("Jill Justice") is a citizen of West Virginia. She is not named as a Defendant in this action, but is a member of the limited liability companies identified below that are Defendants.

5. James C. Justice, II is a citizen of the State of West Virginia. He is the current governor of the State of West Virginia, and will be referred to herein as "Governor Justice."[1] Governor Justice is not named as a Defendant in this action, but is or was a member of certain limited liability companies identified below that are Defendants. He is the father of Jay Justice and Jill Justice.

6. Justice Companies is a corporation chartered under the laws of Delaware with its principal place of business in Virginia. Upon information and belief, its shareholders are Governor Justice, Jay Justice and Jill Justice. Jay Justice previously was its executive vice president and Governor Justice was its president.

7. Kentucky Fuel is a corporation chartered under the laws of Delaware, with its principal place of business in West Virginia. Jay Justice has been its executive vice president. Jay Justice is now its president.

8. Justice Management Services, LLC ("Justice Management Services") is a corporation chartered under the laws of Virginia, with its principal place of business in Virginia. Upon information and belief, it and/or its members are affiliates of Justice Companies and/or

---

[1] Governor Justice was not the Governor of West Virginia at the time of many of the transactions described herein. He is referred to herein as "Governor Justice" out of respect for his office.

members of the Justice Family. Upon information and belief, its members are citizens of states other than Tennessee and Kentucky.

9.     Justice Farms of North Carolina, LLC ("Justice Farms") is a limited liability company organized under the laws of Virginia with its principal place of business in Virginia. Upon information and belief, its members are Jay Justice and Jill Justice, who are citizens of Virginia and West Virginia, respectively. It is an affiliate and an insider of Justice Companies.

10.     Oakhurst Club, LLC ("Oakhurst Club") is a limited liability company organized under the laws of West Virginia with its principal place of business in West Virginia.  Its members are Governor Justice, Jay Justice, and Jill Justice, who are citizens of West Virginia, Virginia, and West Virginia, respectively. It is an affiliate and an insider of Justice Companies.

11.     Southern Minerals, LLC ("Southern Minerals") is a former limited liability company organized under the laws of Virginia that had its principal place of business at 302 S. Jefferson Street, Roanoke, Virginia. Its status as a Virginia limited liability company recently was "cancelled."  *See* Exhibit 1 hereto. Upon information and belief its status is now "active."  It is an affiliate and an insider of Justice Companies. Upon information and belief, its sole member is Southern Coal Corporation, which is a Delaware corporation with its principal place of business in Virginia.

12.     This Court has jurisdiction of this action because the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of costs and interest.

### Factual Background – Plaintiffs Become Creditors of Justice Companies

13.     The business dealings between Plaintiffs and Justice Companies began in 2005.  On October 5, 2005, NLTM and Kentucky Fuel Corporation ("Kentucky Fuel"), entered into

"Assignment of Leases and Permits" (the "Original Assignment"). In that Original Assignment, among other things, NLTM assigned certain leases of mineral rights, known as the Deep Wood Leases and the Fivemile Leases, to Kentucky Fuel.

14. On November 23, 2005, Justice Companies executed a Guaranty Agreement (the "Justice Guaranty"), pursuant to which, among other things, it guaranteed the obligations of Kentucky Fuel to NLTM under the Original Assignment.

15. In the Original Assignment and the Justice Guaranty, Justice Companies agreed to pay Plaintiffs' reasonable attorneys' fees and expenses incurred as a result of any default or failure to perform by Kentucky Fuel or Justice Companies.

16. On or about November 22, 2010, NLTM, Kentucky Fuel, Fivemile, Justice Companies and others entered into an agreement styled "Fourth Amendment of Assignment of Leases and Permits" (the "Fourth Amendment").

17. In the Fourth Amendment, the parties agreed, among other things, to the following:

a. Kentucky Fuel agreed to provide to Fivemile all payments due under the lease of property known as the "Strong Brothers property" within seven days of any request for such payment,

b. Kentucky Fuel agreed to pay NLTM Monthly Retainer Fees of $10,000 per month, beginning on December 1, 2010.

c. Article 14 provided as follows:

14. **Costs**. If any lawsuit, arbitration or other action is commenced or taken which arises out of or relates to this Agreement, the prevailing parties shall be entitled to recover from the defaulting party all costs, fees and expenses, including all attorney fees and expenses, in connection therewith.

d. Justice Companies reaffirmed its obligations under the Justice Guaranty and

confirmed that such obligations include the obligations of Kentucky Fuel in the Fourth Amendment as well as the obligations pursuant to the original Justice Guaranty.

18.     Kentucky Fuel has not paid the Monthly Retainer Fees as required by the Fourth Amendment.  As of the date this Amended Complaint is being filed, the unpaid Monthly Retainer Fees are $790,000, consisting of the $10,000 per month from May 1, 2011, through November 1, 2017.  These Monthly Retainer Fees continue to accrue at the rate of $10,000 per month.

19.     Kentucky Fuel has failed and refused to pay rents due under the lease of the Strong Brothers Property as required by the Fourth Amendment.  As of the date this Complaint is being filed, the amount of such payments owed by Defendants is $20,000.

20.     Justice Companies has failed and refused to pay the amounts owed by Kentucky Fuel as required by the Justice Guaranty.

21.     Kentucky Fuel's and Justice Companies' failure to honor their contractual obligations described herein was intentional and was part of their business plan and strategy, as evidenced by their course of dealings whereby they have evidenced a pattern and practice of disregarding and refusing to pay their contractual obligations.

**The Original Federal Suit**

22.     On May 8, 2012, Plaintiffs instituted an action in the United States District Court for the Eastern District of Kentucky styled *New London Tobacco Market, Inc., et al. v. Kentucky Fuel Corporation and James C. Justice Companies, Inc*., Case No. 12-91-GFVT (the "Fivemile Action").

23.     On September 30, 2014, this Court entered a default judgment against the Defendants in the Fivemile Action.  This default judgment established the Justice Companies' liability for the Monthly Retainer Fees, the Strong Brothers Lease Payments and Plaintiffs'

attorneys' fees and expenses.  It also entered judgment in favor of Plaintiffs and against Justice Companies for fraud and punitive damages.

24.     In the Fivemile Action, the Magistrate Judge issued a Report & Recommendation on January 17, 2017, recommending a judgment against Justice Companies in excess of $60,000,000. The Court did not initially accept this recommendation, but referred the matter back to the Magistrate Judge for an evidentiary hearing and a Report and Recommendation regarding the amount of damages that should be awarded. Thus, as of the filing of this Complaint there has not been a final judgment in the Fivemile Action for the amount of damages, including the amount of attorneys' fees that the Court will award pursuant to the default judgment against Justice Companies.  However, the Court's Order of September 30, 2014, establishes that Justice Companies are liable to the Plaintiffs for breach of contract, fraud and punitive damages.

### Justice Companies' Transfers of Assets

25.     After the filing and service of the Fivemile Action in May 2012, the Justice Companies in combination with other persons and companies, began to engage in a series of transactions with the intent to hinder, delay or defraud its creditors.  Some of these transfers were transfers of real estate to Justice Companies' related entities, insiders or affiliates made without valuable consideration for the real estate transferred.  Others were transfers of valuable real estate in exchange for cash or other consideration that would make it more difficult for creditors, such as Plaintiffs, to collect their debts from Justice Companies. These fraudulent conveyances include the transfers described below.  They are summarized in Exhibit 2 hereto.

### Transfers for No Consideration

26.     Beginning in 2013 and continuing through at least 2016, Justice Companies engaged in numerous additional transfers with the intent to hinder, delay or defraud its creditors.  All these

transfers, which are described in the following paragraphs 25 through 31, were made to transferees that were affiliates and insiders of Justice Companies. Justice Companies did not receive consideration equal to a reasonably equivalent value of the properties transferred because no consideration was paid for any of these transfers.

27.     By Quitclaim Deed dated November 27, 2013, recorded on January 8, 2014 (Exhibit 3), Justice Companies transferred the mineral rights to approximately 929 acres in Marion County, South Carolina to Southern Minerals, LLC. There was no reasonably equivalent value received for the transfer.  Although the Deed includes a pro-forma recital that the stated consideration for this transfer was $5.00, it includes an affidavit that "no monies were exchanged" for the transfer.  This Deed was executed by Jay Justice on behalf of Justice Companies.

28.     On January 24, 2014 Justice Companies entered into a series of at least ten transactions by which it transferred valuable real estate in Pasquotank and Perquimans Counties, North Carolina to Justice Farms. These transactions were accomplished by deeds executed that date and recorded on February 5, 2014. Each of these deeds was executed by Jay Justice on behalf of Justice Companies.  There was no reasonably equivalent value received for the transfer for each of the property interests transferred.  Although each contains a pro-forma recital of a stated cash consideration of $10.00, each also includes a certification that the consideration for the transfer was "$0.00." The properties transferred are as follows:

    a.     0.43 acres in Pasquotank County, North Carolina (Exhibit 4);

    b.     69.25 acres in Pasquotank County, North Carolina (Exhibit 5);

    c.     Two parcels containing 876.48 acres in Pasquotank County, North Carolina (Exhibit 6);

d.      Seventeen parcels containing 10+ acres in Pasquotank County, North Carolina (Exhibit 7);

e.      272 acres in both Pasquotank and Perquimans Counties, North Carolina (Exhibit 8);

f.      3.87 acres of the Tanglewood Industrial Park in Pasquotank County, North Carolina (Exhibit 9);

g.      A lot and right of way in in Pasquotank County, North Carolina for a stated consideration of $10.00 (Exhibit 10);

h.      Two subdivision lots in Pasquotank County, North Carolina for a stated consideration of $10.00 (Exhibit 11);

i.      A lot consisting of two tracts containing seven parcels of a subdivision in Pasquotank County, North Carolina (Exhibit 12); and

j.      3918 acres in Pasquotank County, North Carolina (Exhibit 13).

29.     By Special Warranty Deed dated August 12, 2014, recorded on August 15, 2014 (Exhibit 14), Justice Companies transferred 123.053 acres in Orange County, Virginia to Justice Farms. The property interest transferred was in excess of the consideration for the transfer and there was no reasonably equivalent value received for the transfer.  Although this Deed contains a pro forma recital that the stated consideration for this transfer was $10.00, the Deed certifies that no consideration was paid but that the assessed value of the property conveyed was $1,182,700. This Deed was executed by Jay Justice on behalf of Justice Companies.

30.     By Special Warranty Deed dated August 12, 2014, recorded on August 15, 2014 (Exhibit 15), Justice Companies transferred 1,559.527 acres in Orange County, Virginia to Justice Farms. The property interest transferred was in excess of the consideration for the transfer and there

was no reasonably equivalent value received for the transfer. Although this Deed contains a pro forma recital that the stated consideration for this transfer was $10.00, the Deed certifies that no consideration was paid but that the assessed value of the Property conveyed was $7,288,700.00. This Deed was executed by Jay Justice on behalf of Justice Companies.

31.     By Special Warranty Deed dated October 19, 2014, recorded on October 20, 2014 (Exhibit 16), Justice Companies transferred 710 acres in Prince George County, Virginia to Justice Farms. The property interest transferred was in excess of the consideration for the transfer and there was no reasonably equivalent value received for the transfer. Although this Deed contains a pro forma recital that the stated consideration for this transfer was $10.00, the Deed also certifies that no consideration was paid because it was between related parties, but that the assessed value of the property conveyed was $1,277,400.00. This deed was executed by Jay Justice on behalf of Justice Companies.

32.     By Quitclaim Deed dated April 5, 2016, recorded on April 6, 2016 (Exhibit 17), Justice Companies transferred 500 acres in Monroe County, West Virginia to Oakhurst Club, LLC. Although this Deed contains a pro forma recital that the stated consideration for this transfer was $10.00, it certifies that no consideration was paid because it was a quitclaim deed between related parties. The property interest transferred was in excess of the consideration for the transfer and there was no reasonably equivalent value received for the transfer. This Deed was executed by Stephen W. Ball on behalf of Justice Companies.

33.     By Special Warranty Deed dated May 9, 2016, recorded on May 10, 2016 (Exhibit 18), Justice Companies transferred four tracts of land comprising over 112 acres in Clarendon County, South Carolina to Justice Farms. There was no reasonably equivalent value received for the transfer. Although the Deed recites a pro-forma consideration for this transfer of "Five and no/100

($5.00) Dollars and No Consideration to the Grantor in hand paid," it also includes an Affidavit stating that it is exempt from a recording fee because there was "No Consideration" for the transfer. This Deed was executed by Jay Justice on behalf of Justice Companies

**Other Transfers by Justice Companies**

34.     In addition to the above fraudulent conveyances, Justice Companies has made, or agreed to make, other transfers of assets that Plaintiffs believe are made with the intent to hinder, delay or defraud Plaintiffs as creditors of Justice Companies.  These include those described in the following paragraphs 33 through 38.   Plaintiffs believe and therefore allege that the intent of Justice Companies and its Co-Conspirators (as defined below) has been and is to convert real property to cash or other assets that will be difficult to trace or that can be dissipated or hidden, with the intent to hinder, delay or defraud Plaintiffs and other creditors.

35.     By General Warranty Deed made on April 28, 2014, and executed by Jay Justice (Exhibit 19), Justice Companies transferred certain real property commonly described as 302 S. Jefferson Street, Roanoke, Virginia to 302 Jefferson, LLC, a Virginia limited liability company. Upon information and belief, 302 Jefferson, LLC is an affiliate of Justice Companies.  This deed recites that the consideration was $3,200,000.

36.     By Special Warranty Deed dated November 25, 2014, and recorded on November 26, 2014 (Exhibit 20), Justice Companies transferred over 3900 acres in Clarendon County, South Carolina, to Jay Justice.  An Affidavit with this deed recites that the consideration "paid or to be paid" is $13,500,000.  Plaintiffs do not know if this amount has been paid or, if so, to whom.  This deed was executed by Steve Ball.

37.     Beginning in 2014, Justice Companies entered into agreements to sell over twenty thousand acres of real property located in North Carolina, South Carolina and Virginia to affiliates

of Farmland Partners, Inc. ("FPI (REIT)"), a publicly traded real estate investment trust organized under the laws of Maryland in two separate transactions. FPI (REIT) acquires farmland throughout the United States and then leases the farmland to others. Upon information and belief, Farmland Partners Operating Partnership ("FP Operating Partnership") is owned by FPI (REIT). FP Operating Partnership owns and operates several subsidiaries, including FPI Colorado, LLC ("FPI-CO") and FPI Carolinas, LLC ("FPI-CAR").These two transactions were pursuant to Real Estate Purchase Agreements signed on November 13, 2014 ("REPA I") and March 23, 2015 ("REPA II") and are described below.

      a.      The first real estate purchase agreement, REPA I, contracted to convey seven farms in Marion, Lee, Clarendon, and Sumter Counties, South Carolina to FPI-CO. On or about December 22, 2014, Justice Companies and Ten Mile Bay, LLC entered into REPA I with FPI-CO to transfer 6,819 acres of real property to FPI-CO for a purchase price of $28,000,000, payable by wire transfer. This purchase price was later amended to $27,450,000. REPA I allowed the sellers to lease back the property at a rate of $746,147 (later increased to $764,727.54) per year for three years. REPA I also included a repurchase option, allowing the sellers to repurchase the property on the third anniversary of the Agreement. REPA I was signed by "James C. Justice" on behalf of Justice Companies.

      b.      By Special Warranty Deed dated December 22, 2014, recorded in Sumter and Clarendon Counties on December 22 and 23, 2014, respectively, Justice Companies transferred fourteen parcels containing approximately 3,000 acres in Sumter and Clarendon Counties, South Carolina to FPI-CO. These deeds contain pro forma recitals of $5.00 consideration, but the Affidavits of Consideration attached to the deeds state that this is "an

arm's length real property transaction and the sales price paid or to be paid in money or money's worth was $11,416,327.12" [for the deed recorded in Clarendon County] and $3,926,261.88 [for the deed recorded in Sumter County]. These deeds reserved a repurchase option by the grantors. These deeds were executed by Governor Justice on behalf of Justice Companies. Upon information and belief, the transaction evidenced by these deeds were part of the transaction pursuant to REPA I. Copies of these deeds recorded in Clarendon and Sumter Counties are attached as Exhibits 21 and 22, respectively.

c.      By Warranty Deed dated December 22, 2014, recorded on December 23, 2014 (Exhibit 23), Justice Companies transferred nine tracts containing over 2,100 acres in Marion County, South Carolina to FPI-CO. This deed contains a pro forma recital of $5.00 consideration, but the Affidavit of Consideration attached to the deed states that it is "an arm's length real property transaction and the sales price paid or to be paid in money or money's worth was $7,034,063.00. This deed was executed by Governor Justice on behalf of Justice Companies. Upon information and belief, the transaction evidenced by this deed was part of the transaction pursuant to REPA I.

d.      The second real estate purchase agreement, REPA II, contracted to convey eight farms in three states. On or about June 2, 2015, Jay Justice, individually, Justice Companies, Justice Farms and Alabama Carbon, LLC, as "Seller" entered into REPA II with FPI-CAR (the "Buyer"), FPI (REIT) and FP Operating Partnership to transfer 15,042 acres of property located in Beaufort, Currituck, Pamlico, Pasquotank, and Perquimans Counties, North Carolina; Marlboro County, South Carolina, and Chesapeake, Virginia to FPI-CO. Upon information and belief, the total consideration for this transaction was over

$49,000,000, payable in cash or by wire, 824,398 shares of common stock of FPI (REIT), and 1,993,709 units of limited partnership interest in FP Operating Partnership ("OP Units"), of which 883,723 units were redeemable for cash.  REPA II was signed by "James C. Justice" on behalf of Justice Companies.  Upon information and belief, the aggregate fair value of the common stock and OP Units was $30,914,634, and the total purchase price for this transaction paid to the Sellers, including the cash consideration, common stock of FPI (REIT) and the OP Units was $80,913,167.  *See* excerpt of FPI Form 10-Q for the quarter ended June 30, 2015 (Exhibit 24).

     e.     By Special Warranty Deed dated May 29, 2015, recorded on June 3, 2015 (Exhibit 25), Justice Companies and Justice Farms, transferred three farm properties known as REPA Farm 5, 6 and 7, containing over 3,000 acres in Pasquotank County, North Carolina and Perquimans County, North Carolina to FPI-CAR.  The consideration for this transfer was not specified. This Deed reserved a repurchase option by the grantors. This Deed was executed by Governor Justice on behalf of both Justice Companies and Justice Farms of North Carolina, LLC.  Upon information and belief, the transaction evidenced by this deed was part of the transaction pursuant to REPA II.

38.     Justice Companies currently is auctioning Flowerdew Hundred Plantation, a 1,300 acre property with a 14,000 square foot house in Prince George County, Virginia.  Flowerdew Hundred Plantation previously was listed for sale at $12.2 million. A copy of a listing for this property is attached as Exhibit 26.

39.     Justice Companies currently is auctioning Horseshoe Farm, an 880 acre property with a 7,200 square foot house on the Robinson and Rapidan Rivers in Rapidan, Virginia.  Horseshoe Farm was previously listed for sale at $9.2 million.  A copy of a listing for this property

is attached as Exhibit 27.

40.     Justice Companies currently is auctioning Rapidan Farm, a 1,700 acre property in Culpeper, VA. The improvements on the property include a 4,500 square foot main house as well as several other homes. Rapidan Farm previously was listed for sale for $18.8 million. A copy of a listing for this property is attached as Exhibit 28.

**Transfers of Kentucky Fuel's Assets to Affiliates and Insiders**

41.     Beginning in 2013, Kentucky Fuel also engaged in a series of transactions designed to transfer its assets with the intent to hinder, delay or defraud its creditors, including Plaintiffs. The transactions that are known at the time of the filing of this Amended Complaint relate to the transactions between Kentucky Fuel and New Lead Holdings, Limited, ("New Lead") that are described in various filings in the Fivemile Action, most recently in Plaintiff's Memorandum in Support of Motions for Sanctions and Renewed Motion under Rule 55 Based Upon Changed Circumstances and New Facts (D.E. 357).

42.     In 2013, Kentucky Fuel entered into a series of transactions by which it agreed to assign the Fivemile leases and mining permit to New Lead.  In various agreements relating to that transaction, Kentucky Fuel agreed that certain of New Lead's financial obligations to Kentucky Fuel would be paid by a company called Hanover Holdings I, LLC ("Hanover"), which was an affiliate of the Magna Group ("Magna").

43.     Part of the consideration paid by New Lead for the Fivemile assets was a promissory note in the original principal amount of $7,500,000, made by New Lead payable to Kentucky Fuel. Kentucky Fuel and New Lead agreed that pursuant to a Debt Purchase Agreement (the "DPA") that was entered into in late 2013, Hanover would purchase three notes totaling $11,000,000 that represented part of the initial purchase price for the Fivemile assets.  These included the $7,500,000

14

note made by New Lead payable to Kentucky Fuel. Hanover would then make payments to Kentucky Fuel pursuant to a payment schedule negotiated between the parties. Thus, the payments by Hanover pursuant to the DPA were actually payments on behalf of New Lead for the valuable Fivemile leases and permit that Plaintiffs had assigned to Kentucky Fuel in the Fourth Amendment.

44.     The payments owed to Kentucky Fuel for the Fivemile Assets, however, were not made to Kentucky Fuel. They were instead diverted to Jay Justice's personal brokerage account at Goldman Sachs and to Justice Management Services. These payments include the following:

| Date | Amount | Recipient |
| --- | --- | --- |
| 12/23/13 | $508,575 | James C. Justice, III Brokerage Acct. |
| 1/6/14 | $500,000 | Unknown |
| 1/17/14 | $500,000 | Unknown |
| 2/19/14[2] | $339,050 | James C. Justice, III Brokerage Acct. |
| 2/26/14 | $339,050 | Justice Management Services |
| 3/31/14 | $1,084,960 | Justice Management Services |
| 4/30/14 | $1,084,960 | Justice Management Services |
| 6/2/14 | $1,084,960 | Justice Management Services |
| 6/16/14 | $2,068,205 | Justice Management Services |

## COUNT I
### (Fraudulent Transfers)

45.     Plaintiffs reaffirm and reallege the allegations of the above paragraphs as if set forth fully herein.

46.     The transfers of real property and other assets described above by Justice Companies and Kentucky Fuel were made without valuable consideration. They were made with the actual intent to hinder, delay or defraud Plaintiffs, who were creditors of Justice Companies and Kentucky Fuel.

47.     Justice Companies did not receive a reasonably equivalent value in exchange for the

---

[2] This transfer to Mr. Justice may not have been completed.

transfers described in paragraphs 26-33, above, and it was engaged in a business for which its remaining assets were unreasonably small in relation to the business.

48.     Kentucky Fuel did not receive a reasonably equivalent value in exchange for the transfers described in paragraphs 41-44, above and it was engaged in a business for which its remaining assets were unreasonably small in relation to the business.

49.     The transfers by Justice Companies described herein that were made after it was served with the Complaint in the Fivemile Action and, in any event, after the Magistrate Judge's initial Report and Recommendation for sanctions and default judgment on March 25, 2013, were made when Justice Companies believed that it would incur debts beyond its ability to pay as they became due.

50.     The transfers of Kentucky Fuel's assets described in paragraphs 41-44, above, were made when Kentucky Fuel believed that it had incurred or would incur debts beyond its ability to pay as they became due.  Upon information and belief, Kentucky Fuel was insolvent or was rendered insolvent by such transfers.

51.     The transfers described above were made at a time when Justice Companies and Kentucky Fuel were not paying their debts as they became due. Justice Companies and Kentucky Fuel were not paying either the monthly retainer fees or the rents due under the lease of the Strong Brothers Property when due.  Prior to 2016 they were not paying the minimum royalties due under the Fourth Amendment when they were due.  As a result, Justice Companies and Kentucky Fuel were presumptively insolvent at the time of these transfers.  In addition, upon information and belief, Justice Companies and Kentucky Fuel and their affiliates were not paying mine safety fines, county taxes and federal and state tax liens as these debts became due.  *See* Exhibit 29.

52.     Justice Companies and Kentucky Fuel also have represented that Plaintiffs would

have difficulty in collecting a judgment against them. They have represented that they would have to file bankruptcy if Plaintiffs were awarded a judgment in the Fivemile Action in the amount recommended by the Magistrate Judge.

53. Because the conveyances executed by Jay Justice as described herein constituted fraudulent and tortious conduct, he is personally liable for the damages caused thereby.

54. Defendants' actions described herein violate the Kentucky Fraudulent Conveyance Act, KRS Chapter 378, §§ 378.010, et seq., including §§ 378.010 – 378.030, and the Kentucky Uniform Voidable Transactions Act, KRS Chapter 378A, § 378A.010, et seq., including §§ 378A.040 and 378A.050, entitling Plaintiffs to the remedies provided by those statutes and at common law.

55. Alternatively, Defendants' actions described herein violate the Virginia Fraudulent Conveyance Act, Code of Virginia § § 55-80 and 55-81 and the common law of Virginia.

56. As a direct and proximate result of the above transfers and Defendants' actions described herein, the Plaintiffs have been damaged in that the Defendants have transferred Justice Companies' and Kentucky Fuel's assets in a manner that will prevent Plaintiffs from collecting the full amount of the debt owed by Justice Companies to them, absent relief by this Court.

57. The Defendants' conduct in making the fraudulent conveyances described herein was intentional, entitling Plaintiffs to an award of punitive damages.

**COUNT II**
**(Conspiracy)**

58. Plaintiffs reaffirm and reallege the allegations of the above paragraphs as if set forth fully herein.

59. Jay Justice, Justice Farms, Southern Minerals, Oakhurst Club, and Justice Management Services (the "Co-Conspirators") (collectively with Justice Companies and Kentucky

Fuel, the "Conspirators") entered into an agreement or combination to accomplish an unlawful act by defrauding Plaintiffs by fraudulently transferring or liquidating the assets of Justice Companies as described herein.

60.     As set forth above, Jay Justice, individually was a transferee of certain of the fraudulent conveyances of Justice Companies' assets.  As such, and because he was acting to benefit himself personally and individually, he was not acting in the interest of Justice Companies. Thus, he stood as a third party with respect to Justice Companies and Plaintiffs.

61.     This agreement was an unlawful and corrupt agreement by the Conspirators to accomplish an unlawful goal of fraudulently transferring or liquidating valuable real estate and belonging to Justice Companies, so that Plaintiffs could not collect the debts owed to them by Justice Companies.

62.      The Co-Conspirators acted in concert with Justice Companies to make the fraudulent conveyances described herein and pursuant to a common design with Justice Companies to accomplish this unlawful goal.

63.     The Co-Conspirators knew that Justice Companies' conduct described herein constituted a breach of duty and gave substantial assistance or encouragement to Justice Companies to breach its duties and accomplish its unlawful goal.

64.     Jay Justice, Kentucky Fuel and Justice Management Services entered into an agreement or combination to accomplish an unlawful act by defrauding Plaintiffs by fraudulently transferring or liquidating the assets of Kentucky Fuel as described herein.

65.     As set forth above, Jay Justice, individually was a transferee of certain of the assets of Kentucky Fuel.  As such, and because he was acting to benefit himself personally and individually, he was not acting in the interest of Kentucky Fuel.  Thus, he stood as a third party with

respect to Kentucky Fuel and Plaintiffs.

66.     This agreement between Kentucky Fuel, Jay Justice and Justice Management Services was an unlawful and corrupt agreement by to accomplish an unlawful goal of fraudulently transferring or liquidating monies owed to Kentucky Fuel, so that Plaintiffs could not collect the debts owed to them by Kentucky Fuel.

67.      Jay Justice, Justice Management Services and Kentucky Fuel acted in concert to make the fraudulent conveyances described herein and pursuant to a common design to accomplish this unlawful goal.

68.     Jay Justice and Justice Management Services knew that Kentucky Fuel's conduct described herein constituted a breach of duty and gave substantial assistance or encouragement to Kentucky Fuel to breach its duties and accomplish its unlawful goal.

69.     As a direct and proximate result of the unlawful conspiracies described herein, Plaintiffs have been damaged.

## COUNT III
### (Attorneys' Fees and Costs)

70.     Plaintiffs reaffirm and reallege the allegations of the above paragraphs as if set forth fully herein.

71.     This action is a lawsuit that relates to the Fourth Amendment.  The Plaintiffs therefore are entitled to recover from Justice Companies and Kentucky Fuel, all costs, fees and expenses, including attorneys' fees and expenses, incurred in connection with this action.  The remaining Defendants are vicariously liable for such fees and expenses as Co-Conspirators.

72.     Plaintiffs are further entitled to recover their reasonable attorneys' fee and costs pursuant to Code of Virginia § 55-82.1.

WHEREFORE, Plaintiffs pray that the Court take jurisdiction of this matter and grant them the following relief.

(1)     Judgment against the Defendants, James C. Justice, III, James C. Justice Companies, Inc., Justice Farms of North Carolina, LLC, Oakhurst Club, LLC, Southern Minerals, LLC, and Justice Management Services, LLC, and any immediate or mediate transferees of the first transferees described herein, other than one who took in good faith for value, for compensatory damages in the amount of any judgment awarded to Plaintiffs in the Fivemile Action or the value of the properties transferred, whichever is less;

(2)     An award of punitive damages in the amount of at least $16,990,000;

(3)     A judgment that the transfers described herein are made with actual intent to hinder, delay or defraud Plaintiffs void;

(4)     A lien *lis pendens* or an attachment of the properties transferred or other property of the transferees, as may be permitted by law;

(5)     All Plaintiffs' attorneys' fees and costs incurred in connection with this action; and such other relief as the circumstances may require, including pre-judgment interest and the costs of these proceedings.

*/s/ John A. Lucas*
*John A. Lucas (011198)
*W. Edward Shipe (023887)
**Wagner, Myers & Sanger, P.C.**
1801 First Tennessee Plaza, 800 S. Gay St.
Knoxville, TN 37901-1308
865.525.4600 (telephone)
865.524.5731 (facsimile)
jlucas@wmspc.com
eshipe@wmspc.com
***admitted pro hac vice***

*/s/ Scott M. Webster*
Scott M. Webster
Tooms, Dunaway & Webster
1306 West Fifth Street, Suite 200
P.O. Box 905
London, Kentucky 40743-0905
606.864.4145 (telephone)
606.878.5547 (facsimile)
swebster@toomsdunaway.com

**Counsel for New London Tobacco
Market, Inc., and Fivemile Energy, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt of this 16th day of November, 2017.

/s/ John A. Lucas