**FILED ELECTRONICALLY**

NEW LONDON TOBACCO MARKET, INC.                                     PLAINTIFFS
and FIVEMILE ENERGY, LLC

v.

JAMES C. JUSTICE COMPANIES, INC.,                                     DEFENDANTS
KENTUCKY FUEL CORPORATION,
JUSTICE MANAGEMENT SERVICES, LLC
JUSTICE FARMS OF NORTH CAROLINA,
LLC, OAKHURST CLUB, LLC,
SOUTHERN MINERALS, LLC, and
JAMES C. JUSTICE, III

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## ITS MOTION TO DISMISS OR TRANSFER PLAINTIFFS' AMENDED COMPLAINT

Defendants, James C. Justice Companies ("JCJC"), Kentucky Fuel Corporation ("Kentucky Fuel"), James C. Justice, III ("Jay Justice"), Justice Farms of North Carolina LLC ("Justice Farms"), Oakhurst Club LLC ("Oakhurst Club"), Justice Management, LLC ("Justice Management") and Southern Minerals LLC ("Southern Minerals" and, together with Justice Farms, Justice Management and Oakhurst Club, "the LLC Defendants"), having moved pursuant to Rules 12(b)(2) 12(b)(3), 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure to dismiss the Amended Complaint, or alternatively, pursuant to 28 U.S.C. § 1404(a), to transfer the case to the Western District of Virginia, respectfully submit this Memorandum of Law in Support of that Motion.

For the reasons more fully set forth below, there are numerous grounds for dismissal. First, this Court lacks personal jurisdiction over Jay Justice, Justice Farms, Oakhurst Club, Justice Management and Southern Minerals because those Defendants have not transacted

business in this Commonwealth or, at the minimum, the claims in this case do not arise out of those Defendants' contacts with this Commonwealth. Second, venue is not proper in this Court because: (1) none of the Defendants resides in Kentucky; (2) there exists another District in which this action might have been brought (the Western District of Virginia, where all of the Defendants reside); and (3) no property that is the subject of this action is situated in Kentucky and no substantial part of the events or omissions giving rise to this fraudulent transfer action occurred in Kentucky. Third, Plaintiffs' claims – or a substantial portion of those claims – should be dismissed for failure to state a claim or, at the minimum, with regard to transfers for which Plaintiffs have failed to join the transferees, for failure to join indispensable parties. Alternatively, if this case is not dismissed in its entirety, it should be transferred, for the convenience of the parties and witnesses and the interests of justice, to the Western District of Virginia.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs, a Kentucky corporation known as New London Tobacco Market, Inc. ("NLTM") and a Tennessee limited liability company known as Fivemile Energy LLC ("Fivemile"), have sued JCJC, Kentucky Fuel, Jay Justice, Justice Farms, Oakhurst Club, Justice Management and Southern Minerals for alleged fraudulent transfers. None of the Defendants is a citizen of Kentucky, and each resides, *inter alia*, in the State of Virginia [Second Declaration of Dustin Deane ("Second Deane Decl."), Exhibit A, ¶ 8; Second Declaration of Jay Justice ("Second Justice Decl."), Exhibit B, ¶ 2.]

This case is related to a prior case, still pending in this Court, in which NLTM and Fivemile sued JCJC on its guarantee of the obligations of Kentucky Fuel Corporation to Plaintiffs under a Fourth Amendment of Assignment of Leases and Permits executed on or about

November 22, 2010.  *See New London Tobacco Market, Inc., et al. v. Kentucky Fuel Corporation and James C. Justice Companies*, Case No.: 12-91-GFVT (the "Original Action"). While a default on liability has been entered against Kentucky Fuel and JCJC in the Original Action, there has been no final judgment entered in that Action.

According to the Amended Complaint in this case, after the filing and service of the Original Action in May 2012, JCJC "began to engage in a series of transactions with the intent to hinder, delay or defraud its creditors." [*Id.*, ¶ 25.] The Amended Complaint identifies certain allegedly "fraudulent" transactions, transfers from JCJC to the LLC Defendants, supposedly facilitated by Jay Justice, in which JCJC was allegedly not paid reasonably equivalent value ("the Category I Transfers").  [Amended Compl., ¶¶ 27 - 33.]  In addition, the Amended Complaint identifies numerous other transfers of property by JCJC for which substantial payments were made to JCJC ("the Category II Transfers").  [Amended Compl., ¶¶ 35 - 37.] Notably, the Amended Complaint makes no allegation that these payments did not constitute reasonably equivalent value to JCJC for these Category II Transfers, and six of the seven Transfers were to parties not named as Defendants in this case.[1]  [*Id.*].  Plaintiffs nonetheless claim that "the intent . . . has been to convert real property to cash or other assets that will be difficult to trace or that can be dissipated or hidden."  [*Id.*, ¶ 34.]  The Amended Complaint also identifies three (3) other allegedly fraudulent transactions where JCJC is merely "in the process" of auctioning property (but has not yet made any transfers) for tens of millions of dollars — again with no allegation that the asking price is less than the full fair market value of the property ("the Proposed Transfers").  [*Id.*, ¶¶ 38-40.]  Finally, the Amended Complaint identifies various

---

[1] In five of the alleged "fraudulent" transfers, the transferees are affiliates of Farmland Partners, Inc. ("FPI (REIT)"), a publicly traded real estate investment trust which, prior to the transfers, had absolutely no relationship — alleged or otherwise — with JCJC or any affiliated Justice family member or entity.  As partial consideration for the transfers, FPI (REIT) transferred stock to JCJC – a fact which in no way signifies any insider relationship between the companies.

payments that Plaintiffs claim should have been paid to Kentucky Fuel that instead were paid to Jay Justice or Justice Management ("the Category III Payments") [*Id.*, ¶ 44.]

None of the properties identified by Plaintiffs as the Category I, Category II or Proposed Transfers is located in Kentucky, none of the parties to the allegedly fraudulent transactions is a Kentucky resident, and none of these transactions was negotiated, executed, or performed in Kentucky. [Second Justice Decl., Exhibit B, ¶ 4.] Similarly, none of the payments identified by Plaintiffs as the Category III Payments was initiated, processed or received by a Kentucky resident and none of these payments was issued, routed through or received in Kentucky. [Second Justice Decl., Exhibit B, ¶ 4.] Nor does the Complaint allege any facts which establish that any of the Defendants, other than JCJC or Kentucky Fuel, has ever done any business in Kentucky — let alone business in Kentucky with any nexus to the claims alleged in this case or even to the claims alleged in the Original Action.

In fact, the LLC Defendants have had no dealings whatsoever with Plaintiffs; no involvement in the transactions at issue in the Original Action and no contacts in Kentucky related to the claims alleged in this case or in the Original Action. [Second Deane Decl., Exhibit A, ¶¶ 9-10.] Similarly, while Jay Justice has transacted business in Kentucky, he has never done so in connection with the transactions at issue in this or in the Original Action. Indeed, Jay Justice has never, in connection with Kentucky Fuel's or JCJC's dealings with Plaintiffs, travelled to Kentucky or knowingly directed communications into Kentucky, by phone, text,

letter or e-mail, and he has never directed any employee of Kentucky Fuel or JCJC to do so. [Second Justice Decl., Exhibit B, ¶ 5-7.][2]

## ARGUMENT

I. **The Amended Complaint Should Be Dismissed, at a Minimum, Against Jay Justice, Justice Farms, Oakhurst Club, Justice Management and Southern Minerals, For Lack of Personal Jurisdiction.**

### A. Applicable Law.

When a defendant brings a Rule 12(b)(2) motion, the burden is on the plaintiff to establish personal jurisdiction. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff cannot meet his burden by simply pointing to the pleadings, "but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* Moreover, at the bare minimum, the plaintiff must "allege in [its] pleading the facts essential to show [personal] jurisdiction." *Malone v. Windsor Casino, Ltd.,* 14 Fed. Appx. 634, 636 (6th Cir. 2001); *see also Gueye v. Richards,* Civ. Action No. 15-178-DLB, 2015 WL 6395009, at *3 (E.D. Ky. 2015 Oct. 21, 2015); *Perry v. Agricultural Dep't.,* Civ. Action No. 14-168-DCR, 2015 WL 1757946, at *7 (E.D. Ky. Apr. 16, 2015); *Macleod v. Grajales,* Civ. Action No. 13-188-DCR, 2014 WL 1385249, at *4 (E.D. Ky. Apr. 8, 2014).

"A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so." *Kerry Steel, Inc. v.*

---

[2] Representatives of JCJC and Kentucky Fuel other than Mr. Justice, including Steve Ball and Tom Lusk, had the primary contact with Plaintiffs on the transactions at issue in the Original Action, and Jay Justice never had any active involvement in those dealings. The agreements, including the Fourth Amendment and the JCJC Guaranty between Plaintiffs, on the one hand, and Kentucky Fuel and JCJC, on the other, were negotiated and executed outside of Kentucky; moreover, as alleged by Plaintiffs in the Original Action, the Kentucky properties conveyed in those agreements were never mined. None of the individuals participating in the negotiations and the execution of the contract documents – even on the Plaintiffs' side – was a Kentucky resident. The agreements were negotiated and executed by Will Brownlow, who is a Tennessee resident and they were drafted for Plaintiffs by their Tennessee counsel, R. Culver Schmid. [Second Declaration of Steve Ball ("Second Ball Decl."), Exhibit C, ¶¶ 3-5.] Indeed, with the possible exception of limited contacts with Mr. Doug Terry, whom Kentucky Fuel and JCJC did not understand to be representing Plaintiffs, no one at Kentucky Fuel or JCJC ever dealt with an employee of either Plaintiff that resided in Kentucky. [*Id.*, ¶ 6.]

*Paragon Indus., Inc.,* 106 F.3d 147, 148 (6th Cir. 1997). In Kentucky, the issue of long arm

jurisdiction is governed by a two-step process. First, review must proceed under KRS 454.210 to

determine if the cause of action arises from conduct or activity of the defendant that fits into one

of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be

exercised. When that initial step results in a determination that the statute is applicable, a second

step of analysis must be taken to determine if exercising personal jurisdiction over the non-

resident defendant offends his due process rights. *See Caesars Riverboat Casino, LLC v. Beech,*

336 S.W.3d 51, 57 (Ky. 2011). In the Sixth Circuit, the courts look to a three-part test to make

this due process determination:

> First, the defendant must purposefully avail himself of the
> privilege of acting in the forum state or causing a consequence in
> the forum state. Second, the cause of action must arise from the
> defendant's activities there. Finally, the acts of the defendant or
> consequences caused by the defendant must have a substantial
> enough connection with the forum to make the exercise of
> jurisdiction over the defendant reasonable.

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996).

Until 2011, Kentucky's long arm statute was interpreted as reaching the outer limits of

federal due process, thus collapsing the above two-step process into a single, constitutional

inquiry. *Caesars,* 336 S.W.3d at 55-56. In *Caesars,* the Court restored the independent

significance of Kentucky's long-arm statute, declaring that it must be satisfied as an "initial

step." *Id.,* at 57. Thus, if a plaintiff is unable to satisfy KRS 454.210, the court may not assert

jurisdiction over the nonresident defendant, even if doing so would comport with federal due

process. *Id.; see also Gentry v. Mead,* Civ. Action No. 16-100-DLB, 2016 WL 6871252, at *2,

n. 1 (E.D. Ky. Nov. 21, 2016).[3]

---

[3] In *Cox v. Koninklijke Philips, N.V.,* 647 Fed. Appx. 625, 628 (6th Cir. 2016), the Sixth Circuit explicitly
recognized that Kentucky's long arm statute is narrower in scope than the federal due process clause.

This recent development in the Kentucky law is of critical significance to this case. Under the long arm statutes of most states, and under federal due process precedents, jurisdiction may be established over an out of state defendant who commits a tort outside the forum with the intent of causing consequences within the forum. *See, e.g., CompuServe,* 89 F.3d at 1263 ("the defendant must purposefully avail himself of the privilege of acting in the forum state **or causing a consequence in the forum state.**"); *see also Calder v. Jones,* 465 U.S. 783, 788-89 (1984) (exercising jurisdiction, in California over defendant that wrote and edited allegedly defamatory article in Florida comports with federal due process where defendant knew that the "brunt of the harm" would be in California.) On the basis of these and other federal due process precedents, courts in other jurisdictions have found personal jurisdiction to properly lie over out of state transferees alleged to have received property with knowledge that the transfer was made with the intent to "hinder, delay or defraud" the plaintiff – even where the transfer occurred outside of the forum and the transferee had no other contacts with the forum. *See, e.g., Gambone v. Lite Rock Drywall,* 288 Fed. Appx. 9, 14 (3rd Cir. 2008); *see also Sugartown Worldwide LLC v Shanks,* Civ. Action No. 14-5063, 2015 WL 1312572, at **5-7 (E.D. Pa. Mar. 24, 2015); *Limbright v. Hofmeister,* No. 08-12336, 2009 WL 915803, at *7 (E.D. Mich. Mar. 31, 2009) (recognizing the principle, but finding that the transferees lacked the necessary intent). In Kentucky, however, the long arm statute is far more circumscribed. Absent substantial additional contacts with Kentucky – separate and apart from the transfer of property alleged to have been received with the intent of harming a Kentucky resident – jurisdiction cannot lie over an out of state transferee.

Kentucky's long arm statute provides in pertinent part:

> (2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1.    Transacting any business in this Commonwealth;

* * *

3.    Causing tortious injury by an act or omission in this Commonwealth;

4.    Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth.

KRS 454.210(2)(a); *see also Pierce v. Serafin,* 787 S.W.2d 705, 707 (Ky. App. 1990) (where tort is committed by defendant outside of Kentucky, harm in Kentucky is not sufficient, without substantial additional contacts by the defendant with Kentucky, to give rise to personal jurisdiction).  Thus, absent the pleading and proof of facts to establish that Plaintiffs' claims in this case against each of Jay Justice, Justice Farms, Oakhurst Club, Justice Management and Southern Minerals arose out of their transacting business in Kentucky, Plaintiffs cannot succeed in establishing personal jurisdiction over that Defendant.

One additional recent development in the governing law needs to be considered on Defendants' 12(b)(2) Motion.  Under both Kentucky's long arm statute and the applicable federal due process precedents, a plaintiff must plead and prove not only that the defendant has engaged in sufficient activities in Kentucky, but further that the plaintiff's claims have arisen from those activities.  *See* KRS.210(2)(b) ("[w]hen jurisdiction over a person is based upon this section, only a claim **arising from** acts enumerated in this section may be asserted against him."); *see also CompuServe,* 89 F.3d at 1263 (construing the federal due process test, "the cause of action must arise from the defendant's activities there.")  Recent federal and Kentucky precedents have made plain that this "arising from standard" must be strictly construed.

Thus, in *Caesars,* the Kentucky Supreme Court soundly rejected the plaintiff's assertion that her injury at the defendant's riverboat casino arose from the defendant's advertisements in Kentucky because, but for the enticement of those Kentucky ads, she would not have travelled to the defendant's Indiana property:

> The Court of Appeals addresses the ["arising from"] point with its conclusion that Appellants' contacts in Kentucky "clearly contributed to [Appellee's] presence on Caesars' premises." However, that link between Appellants' activities in Kentucky and Appellee's slip and fall is far too attenuated to fit within the definition of "arising from." Appellee's presence at the Indiana Casino did not cause her injury. Her claim arises from the butter negligently left on the floor. That Appellee might not have been on the casino boat premises that day *but for* the allure of Appellants' promotional activities in Kentucky does not alter that fact….

*Id.,* at 59. Similarly, in *Bristol Myers Squibb Co. v. Superior Court of California,* 137 S. Ct. 1773 (2017), the United States Supreme Court rejected the California Supreme Court's "sliding scale approach to specific jurisdiction." *Id.* at 1778. According to the California court, personal jurisdiction could be established over an out of state drug manufacturer based on its extensive sales of the complained of product in California, even though the plaintiffs had bought the product outside of California. *Id.,* at 1779. This was so, the California court reasoned, because the out of state purchases were made "based on the same allegedly defective product and the assertedly misleading marketing and promotion of that product." *Id.* In response, the high Court reasoned:

> Our settled principles regarding specific jurisdiction control this case. In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Goodyear*, 564 U.S., at 919, 131 S.Ct. 2846 (internal quotation marks and brackets in original omitted). When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected

activities in the State.  *See id.*, at 931, n. 6, 131 S.Ct. 2846 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales").

***

For this reason, the California Supreme Court's "sliding scale approach" is difficult to square with our precedents.  Under the California approach, the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims.  Our cases provide no support for this approach, which resembles a loose and spurious form of general jurisdiction.  For specific jurisdiction, a defendant's general connections with the forum are not enough.  As we have said, "[a] corporation's 'continuous activity of some sorts within a state … is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'"  *Id.*, at 927, 131 S.Ct. 2846 (quoting *International Shoe*, 326 U.S., at 318, 66 S.Ct. 154).

*Id.,* at 1781.

## B.     The Amended Complaint Does Not Plead any Basis for Jurisdiction Over Jay Justice or the LLC Defendants.

Viewed against this legal backdrop, it is clear that Plaintiffs have failed to "allege in [their] pleading the facts essential to show [personal] jurisdiction." *Malone,* 14 Fed. Appx. at 636.  The Amended Complaint is utterly devoid of any allegation that either Jay Justice or any of the LLC Defendants has ever transacted business in Kentucky – let alone in connection with the claims alleged in this case.  All that is pled is that the Defendants allegedly participated in certain out of state transactions intended to "hinder, delay or defraud" the Plaintiffs.  However, as explained above, it is not sufficient, to establish jurisdiction under the Kentucky long arm statute, to allege or even prove that a defendant has committed a tort outside of Kentucky with the intent to harm parties in Kentucky  Thus, Plaintiffs having failed to allege that Jay Justice or any of the LLC Defendants did business in Kentucky – or had any other legally sufficient contacts with

Kentucky – in connection with their claims in this case, their Complaint against those Defendants must be dismissed pursuant to Fed. R. Civ. P. 12(2).[4]

Plaintiff have previously contended, and can be expected to continue to contend, that their pleadings are sufficient to state a basis for personal jurisdiction over Jay Justice and the LLC Defendants based on those Defendants' alleged conspiratorial ties with Kentucky Fuel and JCJC. [DE 16, pp. 9-10, 12-13.] According to Plaintiffs, because Kentucky Fuel and JCJC have sufficient contacts with Kentucky to give rise to personal jurisdiction over them, all that Plaintiffs need to do in order to plead a basis for exercising personal jurisdiction over Jay Justice and the LLC Defendants is to allege that these Defendants "conspired" with Kentucky Fuel and JCJC. Plaintiffs are sadly mistaken.

Preliminarily, Kentucky does not recognize a cause of action for conspiracy to fraudulently transfer assets. *See* pp. 18-19, *infra.* Thus, Plaintiffs conspiracy basis for pleading jurisdiction over Jay Justice and the LLC Defendants must fail on this grounds alone.

Moreover, while Plaintiffs cite cases for the proposition that jurisdiction can be exercised over out of state conspirators where one of the co-conspirators has committed an overt act in furtherance of the conspiracy in the forum, *see, e.g., Kentucky Speedway, LLC v. NASCAR,* 410 F. Supp. 2d 592, 599 (E.D. Ky. 2006), here no such forum based act is alleged. The purported conspiracy between Kentucky Fuel and JCJC, on the one hand, and Jay Justice and the LLC Defendants, on the other, was to transfer collectible assets away from Kentucky Fuel and JCJC and, as such, beyond Plaintiffs' reach. [Amended Compl., ¶ 59.] However, none of the "overt

---

[4] Plaintiffs might point to their make-weight Count III claim for attorney's fees to contend that, at the least, those claims arise out of JCJC's or Kentucky Fuel's transacting of business in Kentucky through its execution of the Fourth Amendment. However, as neither Jay Justice nor the LLC Defendants was a party to the Fourth Amendment, or to the attorney's fees provision contained therein, or to the JCJC guaranty thereof, Plaintiffs' attorney's fees claim cannot serve as a basis for jurisdiction over Jay Justice or the LLC Defendants. *See Bell v. Commonwealth,* 423 S.W.3d 742, 748 (Ky. 2014) (attorney's fees claim requires a statute or contract providing for the recovery of fees).

acts" in furtherance of that "conspiracy" is alleged to have been committed in Kentucky. Plaintiffs have not and cannot allege that any of the property transfers from JCJC alleged in paragraphs 26 through 40 of the Amended Complaint took place in Kentucky. Similarly, Plaintiffs have not and cannot allege that any of the cash payments by Newlead Holdings that they allege should have gone to Kentucky Fuel but were diverted to Jay Justice and Justice Management [Amended Compl., ¶¶ 41-44], were either initiated, routed through or received in Kentucky. Thus, while the Amended Complaint may allege that Kentucky Fuel's and JCJC's incurring of debt to Plaintiffs arose out of their contacts with Kentucky, there is no allegation (nor could any allegation rationally be made) that Kentucky Fuel's and JCJC's incurring of debt to Plaintiffs was in furtherance of a conspiracy to fraudulently transfer monies away from Kentucky Fuel and JCJC in order to defeat Plaintiffs' ability to collect those debts. And given that a "plaintiff resting on the conspiracy theory of jurisdiction 'must plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy,'" *see Kentucky Speedway v. NASCAR,* 410 F. Supp. 2d at 599 (citing *Jungquist v. Sheikh Sultan Bin Khafila Al Nahyan,* 115 F.3d 1020, 1031 (D.C. Cir. 1997)), the Amended Complaint cannot be read to sufficiently allege that Kentucky Fuel or JCJC committed an overt act in Kentucky in furtherance of their alleged conspiracy with Jay Justice or the LLC Defendants. As such, there is no conspiracy basis for jurisdiction over Jay Justice or the LLC Defendants that is adequately pled in the Amended Complaint.

C.     **It Would Be Futile For Plaintiffs To Try to Replead Jurisdictional Facts.**

This is so for two independently sufficient reasons. First, as demonstrated below, venue is undisputedly lacking in this District even were Plaintiffs able to plead sufficient jurisdictional facts against Jay Justice or any of the LLC Defendants. Moreover, the declarations submitted

with this Motion make clear that there is no basis for jurisdiction over these Defendants in this case.

As for the LLC Defendants, neither Southern Minerals, Justice Management nor Oakhurst Club has ever transacted business in Kentucky – with Plaintiffs or otherwise – and neither has ever owned any property in Kentucky or otherwise had any contacts with this Commonwealth. Justice Farms' sole contact with Kentucky is that it is an operator of a corn farm in Mercer County Kentucky; however, that Farm, and Justice Farms' operation thereof, has nothing to do with Plaintiffs or the claims in the Original Action or in this action. [Second Deane Decl., ¶¶ 9-10.] Like the transferee wife in *UAR GP Services LLC v. Hodak,* Civ. Action No., 09-123-JMH, 2010 WL 1368903, at *3 (E.D. Ky. 2010) and the transferee children in *Limbright,* 2009 WL 915803, at *6, the LLC Defendants have nothing to do with Kentucky and the fraudulent claims against them must be dismissed for want of personal jurisdiction.

Nor did Jay Justice have sufficient contacts with Kentucky. None of the transfers upon which Plaintiffs claim in this case had anything to do with Kentucky. Moreover, with regard to the transactions at issue in the Original Action, representatives of Kentucky Fuel and JCJC (JCJC merely being a guarantor of the transaction) other than Jay Justice, including Steve Ball and Tom Lusk, had principal responsibility for those dealings. Jay Justice's sole involvement with Plaintiffs on those transactions ("the Fivemile Transactions") was that he met with Plaintiffs' principal, William G. Brownlow IV, on one occasion; however, that meeting took place at Jay Justice's office in Roanoke Virginia. Mr. Justice does not recall whether he ever communicated by phone, letter or electronically with Mr. Brownlow; however, if he did those communications would not have been purposefully directed into Kentucky, as Jay Justice understood that Mr. Brownlow lived in Tennessee. Finally, given Mr. Justice's limited role in

the transactions with Plaintiffs and given that the transactions with Plaintiffs were neither negotiated, executed or materially performed by any representative of Kentucky Fuel or JCJC in Kentucky, Mr. Justice never, to the best of his knowledge, directed any representative of Kentucky Fuel or JCJC to travel to Kentucky or to reach out to anyone in Kentucky regarding the Fivemile Transactions. [Second Justice Decl., Exhibit B, ¶¶ 5-7; Second Ball Decl., Exhibit C, ¶¶ 3-6.] Thus, any contacts by Jay Justice with Kentucky in this case were far more attenuated than those found sufficient in *Air Products and Controls v. Safetech Int'l,* 503 F.3d 544, 551-52 (6th Cir. 2007); *Apex Contracting v. Charles G. Allen Contracting,* Civil Action No. 5:10-69-KKC, 2012 WL 1983991, at \*\*2-5 (E.D. Ky. June 1, 2012), and *UAR GP Services,* 2010 WL 1368903, at \*3. Moreover, in light of the recent Kentucky and United States Supreme Court rulings, in *Caesars Riverboat,* 336 S.W.3d at 59 and *Bristol Myers,* 137 S. Ct. at 1781, rejecting "but-for causation" and the resort to other contacts to "enhance" the significance of the claim related contacts, Plaintiffs' fraudulent transfer claims against Jay Justice cannot be found, for jurisdictional purposes, to "arise from" Jay Justice's contacts with Kentucky.

## II.    The Amended Complaint Should Be Dismissed for Improper Venue.

28 U.S.C. § 1391(b), the venue provision applicable to this action, provides in pertinent part as follows:

> VENUE IN GENERAL.---A civil action may be brought in---
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.
> RESIDENCY.---For all venue purposes---

(1) a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled;

(2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business…

Subsections 1391(b)(1) and (3) are plainly unavailing to establish venue in this District. As §1391(b)(1) requires **all** of the Defendants to reside in the State where the claim is brought and as Jay Justice is domiciled in Virginia (domicile establishing §1391(b) residence for natural persons), venue would not lie in this District under §1391(b) even assuming *arguendo* that each of the other entity defendants was subject to jurisdiction in Kentucky (which establishes §1391(b) residence in Kentucky for entity defendants). Moreover, as §1391(b)(3) only supports venue in a District where any defendant is subject to jurisdiction if there is no other District where the claims can be brought—and as this claim could be brought in the Western District of Virginia where all of the Defendants reside – venue would not lie in this District under §1391(b)(3). Thus, sufficiency of venue in this case turns on §1391(b)(2), whether a substantial part of property that is subject to this action is situated in this District or whether a substantial part of the events and omissions giving rise to the claim occurred in this District.

As none of the properties alleged to have been fraudulently transferred in Plaintiffs' Complaint is located in Kentucky, the first part of §1391(b)(2) cannot support venue in this District. Moreover, given the focus of the Complaint on out of state transactions in which out of state properties and/or cash payments were allegedly fraudulently transferred by an out of state transferor to out of state transferees, the second part of §1391(b)(2) is equally unavailing. *UAR GP Services,* 2010 WL 1368903, at **4-5, is directly on point here.

In *UAR,* the plaintiff, a Kentucky company, brought supplementary proceedings for fraudulent transfer against the judgment debtor in the underlying lawsuit ("Hodak") and Hodak's wife, a non-party to the underlying lawsuit and a non-resident of Kentucky. The underlying lawsuit, which was initially instituted by Hodak in Kentucky, had arisen out of Hodak's employment in Kentucky and his subsequent disputes with his Kentucky employer. In the supplementary proceedings the plaintiff alleged that Hodak had transferred his interest in a $500,000 investment account ("the Harvest account") to his wife for no consideration and that the transfer rendered him insolvent.

Addressing whether the Eastern District of Kentucky lawsuit that established the plaintiffs' judgment creditor claims against Hodak was a sufficiently substantial event to support venue in that District over the fraudulent transfer claims, the Court concluded that it was not:

> Plaintiff does not allege that the request to transfer the ownership interest in the Harvest Account was not initiated from Kentucky or directed to anyone in Kentucky. Further, there is no allegation that the funds in the Harvest Account were physically maintained in Kentucky. The only connection to the Commonwealth is the fact that Plaintiff obtained the judgment against Ken Hodak and the issuance of a writ of garnishment to Harvest Financial Corporation from this Court in this jurisdiction. Considering this matter as a whole, the Court concludes that these are not "substantial" acts or omissions with regard to Plaintiff's claim of fraudulent transfer as required by 28 U.S.C. § 1391(a). Certainly, the fact that Plaintiff obtained a judgment and, thus, established a judgment creditor status with regard to Defendant, is necessary to its claim. In reality, however, that judgment became a portable thing once it was obtained, susceptible to domestication and efforts at enforcement, including the issuance of writs of garnishment in other jurisdictions.[2] This is particularly meaningful in light of the fact that neither KRS § 378.010 or § 378.020 require that the creditor hold a judgment from a particular jurisdiction (or even hold a judgment, in particular). Consequently, the Court concludes that the Eastern District of Kentucky is not a district in which a substantial part of the events or omissions taken by Ken Hodak (or, for that matter Theresa Hodak) with regard to the particular claim

> of fraudulent transfer occurred, and the claims against Ken Hodak
> shall be dismissed without prejudice for this reason.

*UAR GP Services,* 2010 WL 1368903, at *5. A similar conclusion is warranted in this case, where there has been no judgment entered in the Original Action in Kentucky and where the nexus between the Plaintiffs' claims and Kentucky is much less substantial than that held insufficient in *UAR.*

## III.    The Amended Complaint Should Be Dismissed on Rule 12(b)(6) and (b)(7) Grounds.

First, with regard to Plaintiffs' Count III claim for attorney's fees, even assuming *arguendo* that this is properly pled as an independent Count, it does not state a claim against Jay Justice or the LLC Defendants. Neither Jay Justice nor the LLC Defendants was a party to the Fourth Amendment or the JCJC Guaranty. Thus, the attorney's fees provision contained in the Fourth Amendment and guaranteed in the JCJC Guaranty is not binding on them. And it is settled Kentucky law that, in the absence of a controlling statute or a binding contract, no claim for attorneys' fees can lie. *See Bell,* 423 S.W.3 at 748.

Second, with regard to Plaintiffs' claim on the Category II Transfers (Amended Compl., ¶¶ 35-37) or the Proposed Transfers (Amended Compl., ¶¶ 38-40), Plaintiffs' fraud claim cannot survive on the sole basis of their *ipse dixit* contention that these transactions were intended to hinder, delay or defraud Plaintiffs. As pled by Plaintiffs, JCJC has received millions of dollars in consideration for the consummated transfers and it is asking millions more for the proposed transfers, and there is no allegation that these sums do not constitute fair value for the properties. While Plaintiffs allege that Defendants' "intent . . . has been to convert real property to cash or other assets that will be difficult to trace or that can be dissipated or hidden" [*id.,* ¶ 34], there is no allegation that any cash proceeds of these Category II Transfers have, in fact, been improperly transferred. Where, as here, the plaintiff is suing for intentional fraudulent transfers, the

heightened standards of Rule 9(b) standard, requiring particularization of the facts allegedly constituting the fraud, apply. *See In re Licking River Mining LLC,* Adv. Case No. 16-1034, 2017 WL 2695283, at *8 (Bankr. E.D. Ky. June 21, 2017); *In re Michel,* Adv. Case No. 16-1122, 2017 WL 4159952, at *16 (Bankr. E.D.N.Y. Sept. 18, 2017); *Larson Manufacturing v. Connecticut Greenstar,* 929 F. Supp. 2d 924, 934-35 (D.S.D. 2013). Plainly, Plaintiffs' pleading is not sufficient to state a claim for fraud, under Rule 9(b), where there is no allegation that JCJC has received inadequate consideration for the transfers identified (or has asked for inadequate consideration in the yet to be transfers), where the majority of the Category II Transfers and the Proposed Transfers are not even to insiders, and where there are no other details provided to demonstrate that the transfers were fraudulent.

Third, Plaintiffs' Count I fraudulent transfer claims against Jay Justice for his alleged role in facilitating the Category I Transfers from JCJC to the LLC Defendants (Compl., ¶¶ 27 – 33) fail to state a claim under the Kentucky fraudulent transfer law pled by Plaintiffs.[5] It is settled Kentucky law that only the transferor or the transferee can be liable for an alleged fraudulent transfer. *See CNH Capital America, LLC v. Hunt Tractor, Inc.,* 568 Fed. Appx. 461, 470 (6th Cir. 2014) (under Kentucky law, only a transferor or a transferee – not a beneficiary – can be liable for a fraudulent transfer); *GATX Corp. v. Addington,* 879 F. Supp. 2d 633, 641-45 (E.D. Ky. 2012) (same); *CDK Global v. Scott & Reynolds,* Civil Action No. 14-45-JHM, 2017 WL 956594, at *9 (W.D. Ky. Mar. 10, 2017) (same). As Plaintiffs have pled that the LLC Defendants – and not Jay Justice – are the transferees of the Category I transfers from JCJC, there can be no fraudulent transfer claim against Jay Justice on those transfers. The same holds

---

[5] Kentucky law does not apply to the fraudulent transfer claims alleged in this case. *See* KRS 378A.100(2). However, because Plaintiffs' Complaint alleges that it does, Defendants are addressing those claims under Kentucky law for purposes of their Rule 12(b)(6) Motion.

under Virginia law, which Plaintiffs allege as the alternative source for their fraudulent transfer claims. *See, e.g., Efessiou v. Efessiou,* 41 Va. Cir. 142, 1996 WL 1065637, at **3-4 (Circuit Court of Virginia (Fairfax County) Nov. 12, 1996).

Fourth, Plaintiffs' Count II conspiracy Count should be dismissed in its entirety. Because Kentucky law – like Virginia law – only provides for a creditor to void a fraudulent conveyance (and not for attaching personal damages liability), there is no cause of action under Kentucky law or Virginia law for conspiracy to effect a fraudulent transfer.[6] *See GATX Corp.,* 879 F. Supp. 2d at 648-50; *Efessiou v. Efessiou,* 1996 WL 1065637. At the minimum, there can be no conspiracy claim against a non-transferee to effect a fraudulent conveyance. *Id.; see also In re Minh Vu Hoang,* No. 05-21078-TJC, 2012 WL 195316 (Bankr. D. Md. Jan. 23, 2012). Thus, even if this Court were unwilling to dismiss Count II in its entirety, it should still dismiss that Count as to Jay Justice and the LLC Defendants for all transfers where they were not the transferee.

Finally, this Court should dismiss Plaintiffs' claims for the Transfers identified at paragraphs 35 and 36 - 40 for failure to join indispensable parties. As explained above, neither Kentucky law nor Virginia law provides for money damages as a remedy for fraudulent transfer. *See GATX Corp.,* at 648-50; *Efessiou v. Efessiou*, 1996 WL 1065637. As a result, relief cannot be afforded on Plaintiffs' fraudulent transfer claim, that is, the cancellation of the transfer, without the joinder of the transferee. *See Sugartown Worldwide,* 2015 WL 1312572, at *13 (recognizing that Pennsylvania Fraudulent Transfer Act allows alternative remedies of damages or cancellation, but finding that Rule 19, and thus Rule12(b)(7), requires dismissal of all claims

---

[6] Plaintiffs have alleged their fraudulent transfer claims under KRS 378, which was repealed on January 1, 2016, and under KRS 378A, which took effect on that date. Accordingly, assuming *arguendo* that, as alleged in the Complaint, Kentucky law applies, the pre-2016 transfers would be governed by KRS 378 and the post January 1, 2016 transfers would be governed by KRS 378A. *See CDK Global v. Scott & Reynolds,* 2017 WL 956594, at *5. For purposes of this analysis, the result should be same, because both KRS 378 and KRS 378a limit their remedial reach to allowing the creditor to "void" the fraudulent conveyance.

for cancellation where the transferee is not joined). At the minimum, even were this Court to conclude that damages could be recovered on Plaintiffs' fraudulent transfer claims (which it should not), it should still dismiss those claims seeking the cancellation of the transfers identified at paragraphs 35 and 36-40 of the Amended Complaint for failure to join the transferee as an indispensable party.

## IV. This Case Should Be Transferred, For the Convenience of the Parties and Witnesses and the Interests of Justice, to the Western District of Virginia.

28 U.S.C. §1404(a) authorizes the Court to transfer venue to another district where it might have been brought if it is necessary for the convenience of the parties and witnesses or the interests of justice. Courts have broad discretion to transfer an action pursuant to section 1404 to avoid unnecessary delay and to protect parties, witnesses and the public from undue expense and inconvenience. *See generally Van Dusen v. Barrack*, 376 U.S. 612 (1964). The Supreme Court instructs that "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case by case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622). Courts consider the following factors when ruling on a motion to transfer under §1404(a):

> (1) The convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (6) the practical problems Associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834, 836 (E.D. Mich. 2000); *accord Moses v. Bus. Card Express, Inc.,* 929 F.2d 1131, 1137 (6th Cir. 1991) (holding that a "court should consider the private interests of the parties, including their convenience and the of

potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'") (quoting *Stewart Org.*, 487 U.S. at 30).

In this case, the foregoing considerations overwhelmingly favor proceeding in Virginia. The thrust of Plaintiffs' case involves numerous properties located in Virginia and neighboring states, but not in Kentucky, and the case is predominantly directed towards the transferee defendants, the LLC Defendants and Jay Justice, who are residents of Virginia and who have had little to no contacts with Kentucky. As all or virtually of the allegedly fraudulent transactions at issue took place at least in part in Virginia, where all of the Justice related transferees reside and/or are headquartered, and as none of the parties to these transactions (many of whom are not joined as Defendants to this case) resides in Kentucky, it is plain that Virginia would be a superior location from which to access sources of proof. Jurisdiction over the transferee Defendants in this District is doubtful at best, and Plaintiffs would not be able to obtain complete relief on their fraudulent transfer claims, which seek to void and cancel the allegedly fraudulent transfers, without these necessary parties. Under similar circumstances, in *Hofmeister,* 2009 WL 915803 at **8-9, where the transferor defendants had contacts with the Michigan forum but the transferee defendants all resided outside of Michigan and had no material contacts there, the Court transferred the action to the District where the transferees resided:

> After considering the relevant factors, the Court believes that the proper exercise of discretion calls for a transfer of the action to the United States District Court for the Eastern District of Kentucky. The thrust of the present lawsuit is directed at the Hofmeister children and the trust instruments they have used to protect the assets that formerly were held by the Family Trusts. The Family Trusts are necessary parties to the case, but so are the children; otherwise, the plaintiffs would not be able to obtain complete relief. The defendants, who are the main witnesses, all are amenable to process in Kentucky, which also appears to be the

> location of the main sources of proof. It certainly is more expeditious to adjudicate the present matter in a forum where all defendants can be joined, and, the Court believes, the interests of justice are best served when all the proper parties are before the Court.

Similarly here, where the allegedly fraudulent transfers have no connection to Kentucky, where the underlying transactions involving the Fivemile property were neither negotiated, executed or materially performed in Kentucky, where not only the Defendants but even the managing representatives of the Plaintiffs reside outside of Kentucky (Tennessee), and where Kentucky law does not apply, *see, e.g.,* KRS 378A.100(2), a similar result should apply and this case should be transferred to the Western District of Virginia, from where most of the challenged transactions were effectuated and where all of the Defendants reside.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted. Alternatively, this case should be transferred to the Western District of Virginia.

Respectfully submitted,

/s/ Barry D. Hunter
Barry D. Hunter
Medrith Lee Norman
FROST BROWN TODD LLC
250 West Main Street, Suite 2800
Lexington, KY 40507
Tel.:   (859) 231-0000
Fax:   (859) 231-0011
Email: bhunter@fbtlaw.com
          mnorman@fbt

** CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2017, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will provide notice to all counsel of record.

/s/ Barry D. Hunter
COUNSEL FOR DEFENDANTS

0130678.0649700  4851-2634-8376v1